opinion of the court
Richard S. Lane, J.
Motion and cross motion raise once more the scope of section 226-b of the Real Property Law. Also mooted is the issue of whether immediate family includes a sister.
Pertinent provisions of the apartment lease between plaintiff and defendant (hereinafter Tenant and Landlord, respectively) are as follows: (a) Paragraph No. 2 limits occupancy to “Tenant and the immediate family of Tenant”; (b) Paragraph No. 18 precludes assignment or subletting by Tenant without Landlord’s prior written consent “except as provided by Section 226(b) of the Real Property Law of New York”; and (c) Rider Paragraph No. 33 reads, “Landlord hereby gives Tenant permission to sublet said apartment upon Landlord’s approval, which approval will not be unreasonably withheld.”
In an exchange of correspondence in the fall of 1980, Tenant first presented his sister as an occupant of his apartment during his absence, and furnished information as to her age, education, employment and bank references. Landlord answered rejecting occupancy by anyone other *956 than Tenant, and suggesting that, upon filing an application for lease, she would be added to the waiting list and would be considered if and when the apartment became vacant. Tenant replied adverting to the right given him by the lease to sublet, enclosing her completed application for lease, but stating that he was not vacating the apartment. Landlord’s rejoinder, ignoring the reference to subletting, concluded that discussion of another tenant was irrelevant since he was not planning to vacate.
Either before or during this exchange of correspondence, Tenant’s sister actually moved in, and thereafter Landlord served a notice to cure violation of Paragraphs No. 2, 18 and 33 of the lease followed by a notice to terminate. Tenant countered with an action for judgment declaring his rights as to occupancy and subletting under the lease and with the within motion for a preliminary injunction against any further steps to terminate or evict. Landlord cross-moved to dismiss the action.
To the extent that Tenant was invoking his right under the lease to invite his sister to occupy the apartment with him as a member of his immediate family, Landlord treats the claim with scorn. He notes that the apartment is subject to rent stabilization and refers to the definition of “immediate family” in section 54 of the Code of the Real Estate Industry Stabilization Association of New York City which definition excludes a sister (see to the same effect section 55 of the New York City Rent and Eviction Regulations). He underestimates the force of Tenant’s case.
The definition relied upon by Landlord is not general in application, but is explicitly limited to the purposes of section 54 which, as an exception to over-all protection afforded tenants by rent stabilization, allows a landlord to recover possession of an apartment needed in good faith for his (the landlord’s) immediate family. A narrow definition is obviously appropriate and not transferable out of context to similar undefined language in a lease.
But how much broader is the immediate family contemplated by the lease? Where in the spectrum between the nuclear family on one extreme and the extended family on the other does the pendulum come to rest? Because the *957 phrase is a complex one made up of parts not connected in ordinary usage, resort to Webster’s is not particularly helpful. Nor have I found in the host of previous judicial attempts to grapple with the problem (including my own in Fraydun Enterprises v Ettinger, 88 Misc 2d 617, revd 91 Misc 2d 119) any persuasive rationale for decision.
Approached perforce piecemeal, Tenant’s sister is a direct blood relation. After children and parents, if any, she is his closest blood relation under our laws of descent and distribution. Certainly she was once a member of his immediate family under any definition, and I agree with Tenant that she continues to be for the purpose of occupancy under this lease. The only two cases discovered directly on point are in accord (Matter of Ben-Su-Si Realty Corp. v Coster, 276 App Div 1096; Solomon v Burrows, 90 Misc 2d 770).
To the extent that Tenant was invoking his right under the lease to sublet to his sister, Landlord again gives the claim short shrift. He denies that he was unreasonable under the circumstances, but the main thrust of his argument is that under section 226-b of the Real Property Law he is entitled to be unreasonable, and that the only consequence he will suffer is an obligation to release Tenant from the lease if so requested. In support he cites the now familiar holdings of the Appellate Term, First Department, in Lexann Realty Co. v Deitchman (107 Misc 2d 74), and in Pacer Realty Assoc. v Lasky (NYLJ, Jan. 27,1981, p 5, col 3). Again he underestimates the force of Tenant’s case.
Both before and after the Appellate Term decisions, trial courts have felt uncomfortable with the statute flawed by a conflict between an obvious legislative purpose to enhance not curtail the rights of tenants and the apparent “ineluctable” command of the statutory language after amendment. As a result they have struggled to reach a contrary result (O’Rourke v Greenthal & Co., NYLJ, May 6, 1981, p 10, col 6; Gilbert v Glenwood Mgt. Corp., NYLJ, March 10, 1981, p 6, col 4; Feldman v Simon Bros. Mgt. Co., NYLJ, July 9, 1980, p 6, col 6; Kruger v Page Mgt. Co., 105 Misc 2d 14).
*958 The original language of the statute required an unreasonable landlord to release tenant or accept the sublease which seemed to preclude the option of remaining in tenancy. The language was amended at the same session of the Legislature to bridge this gap but at the same time the obligation to accept the sublease was eliminated.
Despite the apparent reach of the Appellate Term decisions, I find nothing in the statutory language, either before or after amendment, which could possibly be construed to impose a straitjacket on lease negotiations — nothing to prevent a tenant from bargaining for something better. Accordingly, whatever may be the eventual fate of the statute, judicially or legislatively, when it is imposed on a lease silent as to the right to assign or sublet (or one which simply denies the right without consent), I hold that the statute does not deprive Tenant of the benefits of Landlord’s covenant independent of the statute not to unreasonably withhold consent. The rights which would have flowed from the breach of such covenant prior to the statute still flow, and those rights include enforcing a proposed sublease (O’Rourke v Greenthal & Co., supra; 1 Rasch, New York Landlord and Tenant [2d ed], §267; 34 NY Jur, Landlord and Tenant, § 265; see Lexann Realty Co. v Deitchman, 107 Misc 2d 74, supra [Asch, J., dissenting]; Pacer Realty Assoc. v Lasky, NYLJ, Jan. 27,1981, p 5, col 3, supra [Asch, J., dissenting]; see Grayshaw v New Amsterdam Apts. Co., 106 Misc 2d 936).
This result is more compelling here since, perhaps unlike any of the prior cases, appellate or otherwise, Tenant relies on an affirmative grant of right in a rider, while at the same time his rights under the statute are preserved in the printed form of lease. The separateness of the rider is accentuated by reason of the fact that it covers only subletting whereas the statutory protection encompasses both subletting and assignment. Although often used interchangeably, these are distinctly different legal interests and sometimes the one is converted into the other by operation of law (1 Rasch, New York Landlord and Tenant, § 178).
Motion for a preliminary injunction is granted, cross motion to dismiss is denied, and an immediate trial di *959 rected. Issues of fact abound in the ambiguities in Tenant’s position as revealed in the correspondence. What Tenant was really proposing will affect whether Landlord’s response was improper and/or unreasonable.
Settle order on notice providing for an undertaking by Tenant, and the court invites recommendations from the parties at the time of settlement as to the amount thereof.